UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAULI COFFEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-00097-SEB-DML |
| XEROX CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This cause is before the Court on Defendant Xerox Corporation's Motion to Dismiss for Failure to State a Claim [Docket No. 13], filed on April 2, 2013 pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is GRANTED.

### Factual and Procedural Background

The Plaintiff is proceeding without the assistance of counsel, and her Complaint is neither clear nor concise in its presentation of the chronological narrative of her case. Nonetheless, we can glean the following basic facts from the complaint and other filings, which we treat as true for the purposes of this motion.

Sometime in 2010, Plaintiff Pauli Coffey, a resident of Indiana, suffered a severe injury to her right leg, which she describes as a "crushed femur." Compl. 2. Plaintiff applied for Medicaid on October 20, 2010, and by October 25, 2010, she had supplied all information that was required for approval by Medicaid. Pl.'s Resp. 2, ¶ 6[1]; Docket No. 65 at 5.[2] For at least some

---

[1] Plaintiff has filed numerous documents with the Court since Defendant moved to dismiss the case, several of them bearing the title "Response." The document we treat as Plaintiff's response to this motion is her "Response to Xerox Motion to Dismiss" [Docket No. 25], filed on May 17, 2013. Citations to any other documents will be made by docket number.

1

periods in 2010 and 2011, Plaintiff was approved for Medicaid coverage and received a Medicaid card. *See* Docket No. 20, Ex. C.[3]

Plaintiff alleges that employees with Affiliated Computer Services, Inc. ("ACS"), a subsidiary of Defendant Xerox working under contract for the Indiana Family and Social Services Administration ("FSSA"), mishandled her Medicaid coverage and denied her proper care for her injury. *See generally* Compl. 2–6; Def.'s Br. 2. For a three-month period from November 2010 to the end of January 2011, Plaintiff says that she was instructed by Xerox employees at FSSA to seek care for her injury at the nearest emergency room. Compl. 2. Upon repeated visits, emergency room staff provided her with "emergent care," including taping for her knee and braces for her leg. *See* Compl. 2; Docket No. 65 at 5. However, staff at Community Hospitals told Plaintiff that they could not fulfill her requests to see an orthopedic specialist to address the underlying bone injury, because such treatment was not covered under her Medicaid program benefits. *See* Docket No. 1, Ex. H.[4] In the course of visiting numerous hospitals in an attempt to get more substantial treatment, Plaintiff also asserts that she underwent an "unsafe" number of x-ray scans. Compl. 2.

Plaintiff further relates that when, in December 2010, Xerox employees at FSSA finally did approve her access to a specialist, they informed her that there was only one orthopedic specialist in the greater Indianapolis area from whom she could seek care, a Dr. Jeff Anglen. Compl. 3; *see also* Docket No. 1, Ex. G. However, Plaintiff discovered that even a preliminary

---

[2] Magistrate Judge Lynch prepared a summary of the Plaintiff's factual allegations and the claims properly before the Court after conducting a Rule 16 conference with the parties. That pretrial order, which is helpful in responding to this motion to dismiss, is found at Docket No. 65.

[3] Exhibit C contains a document titled "Individual Eligibility History" that appears to show three different periods of eligibility for Plaintiff in this time period.

[4] Exhibit H is an email from an administrator at Community Health Network to Plaintiff expressing regrets that Medicaid would not cover further care at Community and recommending that Plaintiff seek attention at Wishard Hospital. Implied in Plaintiff's Complaint is the assertion that further care at Wishard was also ultimately unavailing.

intake appointment with Dr. Anglen was not possible until February 10, 2011—with actual treatment for her leg likely delayed still further until a subsequent visit. Compl. 3. Plaintiff ultimately never saw Dr. Anglen, but she asserts that he still received reimbursement from Medicaid for having provided care to her. *Id.* Eager to receive more prompt care for her injury—which rendered her unable to work and severely impacted her mobility and ability to care for her child—Plaintiff sought to consult with other orthopedists throughout the Greater Indianapolis area who would agree to provide her care despite the FSSA determination (allegedly reached by Xerox employees) that she was authorized to receive care only through Dr. Anglen. Docket No. 65 at 5–6.

After several weeks of searching, Plaintiff was seen by an orthopedic surgeon, Dr. Berrios, who performed surgery on her right leg on February 1, 2011, four days after her initial visit. Compl. 4. Because she had also damaged her left leg from placing disproportionate weight on it in an attempt to compensate for her right leg injury, Plaintiff underwent a second surgery shortly thereafter. *Id.* In June 2011, Dr. Berrios informed Plaintiff that the surgeries had not been fully successful—at least in part because of the delay in obtaining treatment for so long after the initial injury—and Plaintiff's right leg is now shorter than her left leg, causing pain and hampering her ability to ambulate. *Id.*; Docket No. 65 at 6. Plaintiff now wears leg braces and corrective shoes to ameliorate the effects of this condition. Compl. 4.

Medicaid provided coverage for Plaintiff's various visits to emergency rooms between November 2010 and February 2011, and it also provided coverage for the large quantities of painkillers prescribed by emergency room doctors to help her cope with her pain in the absence of more substantial treatment for her leg injury. Compl. 5. However, consistent with their earlier statements, Xerox employees at FSSA maintained to Plaintiff that Dr. Berrios was not authorized

to provide her coverage, and her only recourse was through Dr. Anglen. Plaintiff asserts that she contacted Xerox/ACS employees on multiple occasions via mail or telephone—the last such contact being on February 7, 2011—and received the same response. Compl. 6.

On September 15, 2011, Plaintiff filed a notice of tort claim with the State of Indiana, listing a loss date of February 1, 2011. Docket No. 1 Ex. B. She subsequently filed suit under 42 U.S.C. § 1983 against the State of Indiana, former Governor Mitch Daniels, and an assortment of other state and FSSA figures in their official capacities. *See Coffey v. State of Indiana et al*, Case No. 1:13-cv-00117-JMS-TAB (S.D. Ind. 2013). Judge Magnus-Stinson of the Southern District of Indiana dismissed her claim on the grounds that a state and its agencies are not "persons" susceptible to suit under Section 1983. Plaintiff filed this suit against Xerox Corporation on January 16, 2013. *See* Docket No. 1.

## Legal Analysis

### Standard of Review

Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's*

*Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than

merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

An additional consideration informs our standard of review here. Because Plaintiff filed her complaint without the assistance of counsel, we construe its contents with still greater liberality than that normally afforded to plaintiffs. *See Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001) (citing *Hudson v. McHugh,* 148 F.3d 859, 864 (7th Cir. 1998)).

## Discussion

The motion to dismiss raises two issues: whether Plaintiff's complaint has stated any legal claim sufficient to put Xerox Corporation on notice of the allegations against it, and whether, if so, any such claim is sufficiently legally viable and factually plausible to withstand a motion to dismiss. We now address these issues in turn.

### I. Sufficiency of the Complaint under Rule 8

Plaintiff's Complaint doubtless lacks clarity, and its comprehensibility is further diminished by its discursions into vitriol and irrelevancy. Defendant Xerox Corporation argues that the Complaint's deficiencies are so severe that it runs afoul of Federal Rules of Civil Procedure 8(a)(2), which provides that a complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Because "Plaintiff's Complaint does not contain specific causes of action, the elements of those causes of action, or facts supporting the elements of those causes of action," Defendant urges that it has not

been properly put on notice of the claims against it and that the Complaint must be dismissed. Def.'s Br. 5.

In requiring a "short plain statement" of a plaintiff's claims, Rule 8 mandates that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. Pro. 8(d)(1). Federal Rules of Civil Procedure 10 further dictates that each claim in a complaint be set forth in separate numbered paragraphs, "each limited as far as practicable to a single set of circumstances," and it also requires that "each claim founded on a separate transaction or occurrence" be "stated in a separate count" if "doing so would promote clarity." Fed. R. Civ. Pro. 10(b); *see also Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011). As the Seventh Circuit has observed, these requirements are not self-justifying formalities. In fact, they serve two principal purposes: to give defendants fair notice of the claims against them and the grounds supporting those claims, *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007), and to "frame the issues and provide the basis for informed pretrial proceedings." *Stanard*, 658 F.3d at 797 (quoting *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000)).

The Seventh Circuit has also made clear, however, that courts should not dismiss a complaint merely for being lengthy or confusing, so long as it somewhere contains a discernible claim. "Where a complaint does not comply with Rule 8's mandate of 'a short and plain statement of the claim' but nevertheless puts the defendant on notice of the plaintiff's claims, dismissal is inappropriate 'merely because of the presence of superfluous matter.'" *Stanard,* 658 F.3d at 797 (quoting *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)). "If the [trial] court understood the allegations sufficiently to determine that they could state a claim for relief, the complaint has satisfied Rule 8," and dismissal based on the inclusion of superfluous material is inappropriate. *Davis,* 269 F.3d at 820–821. The interests of substantial justice compel courts to

construe complaints, if possible, in favor of their drafters. *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992).

Though it follows the letter of neither Rule 8 nor Rule 10 and fails to set forth clearly delineated legal claims for relief, the factual grounds of Plaintiff's grievance against Xerox are nonetheless discernible from her Complaint. In an order following a pretrial conference, Magistrate Judge Lynch found that the Complaint gave Defendant fair notice of the two following allegations:

> (1) That Xerox violated Medicaid laws because Ms. Coffey was denied immediate and necessary medical care even though her right leg injuries were an extraordinary circumstance demanding immediate treatment[;] [and]
>
> (2) That care providers refused to treat Ms. Coffey or to timely treat her and when that occurred, Xerox failed to ensure that Ms. Coffey received prompt treatment from other providers and this failure violated the law.

Docket No. 65 at 3. We agree that the Complaint fairly raises these two related factual issues—and no others.[5]

Defendant argues that only one *legal* claim—if any—emerges from these factual allegations. Def.'s Br. 3. In the Complaint's final paragraph, Plaintiff states that she "prays this court will acknowledge that denying medical care for months on end to any patient with a crushed bone is beyond cruel and unusual and inhumane treatment and, also, clearly a failure of due process." Compl. 7. In subsequent filings, Plaintiff has made clear, even if not deploying the correct terminology, that she intends to bring a constitutional claim against Xerox under 42

---

[5] At the pre-trial conference, Plaintiff argued that four additional allegations were raised by the Complaint: (1) that Xerox made illegal use of her likeness and personal health information, (2) that Xerox has not provided her with copies of her Medicaid records or other personal health information, (3) that Xerox's failure to pay for the surgery performed by Dr. Berrios resulted in his refusal to treat her, "destroyed her credit" and may cause Dr. Berrios to refuse to cooperate as a witness, and (4) that the pain medications she was "grossly over-prescribed" in the course of vainly seeking more substantial care have impacted her ability to care for her son, thereby endangering her safety. Docket No. 64 at 2. Magistrate Judge Lynch found that these allegations were not fairly or properly raised, either because the alleged wrongs took place after the filing (theories 1 and 2), improperly raise the rights of a third party (theory 3), or are not based on facts set forth in the Complaint (theory 4). *Id.* at 3–4. We agree.

U.S.C. § 1983. Docket No. 18 at 3; Docket No. 20 at 2.[6] It is evident that Defendant is on notice of this claim, since it has directed its arguments in this motion to dismiss against its viability. *See* Def.'s Br. 3–4. We therefore read the Complaint as alleging that Xerox, acting under color of state law, deprived Plaintiff of her due process rights under the Fourteenth Amendment.

The Complaint does not contain an explicitly enumerated statutory claim under 42 U.S.C. § 1983 for violation of the Medicaid statute, and we cannot so construe it. Near the beginning of the Complaint, Plaintiff alleges that "Xerox did willingly and knowingly take on the duty and obligation to comply with all Federal laws including, but not limited to, the 14th Amendment AND the Social Security Act of 1965." Compl. 1 (emphasis original). The core thrust of the rest of the Complaint is that Xerox, which contracted with FSSA to administer Indiana Medicaid, denied Plaintiff "proper, adequate, and more than readily available medical care." *See* Compl. 2–7. However, mere assertion that a defendant had an obligation to follow the law and failed to live up to this obligation—without furnishing any other indications of a cause of action—is insufficient to state a claim. *See Powers v. U.S. Dep't of Justice,* 646 F. Supp.2d 153, 155 (D.D.C. 2009) (complaint alleging that defendants "took an oath to uphold . . . federal laws" and violated this oath is insufficient to state any claim). This is especially true with respect to the web of obligations imposed on states by the Medicaid laws; dozens of statutory provisions exist, with some giving rise to private causes of action, and some not. *See generally Planned Parenthood of Indiana, Inc. v. Comm'r of Ind. State Dep't of Health,* 699 F.3d 962, 972–977 (7th Cir. 2012). It is beyond the capacity of this court, as constrained by Rule 8, to pick from these possible statutory causes of action on Plaintiff's behalf, even if it is clear that Plaintiff believes Defendant

---

[6] In one of these subsequent filings, as in above-quoted language from the Complaint, Plaintiff appears to reference the Eighth Amendment's prohibition on "cruel and unusual punishments" rather than the more appropriate Due Process Clause of the Fourteenth Amendment—although she also mentions due process. Because the wrongful denial of a benefit or entitlement falls under the rubric of the Fourteenth rather than Eighth Amendment, we construe her constitutional claim as a due process one.

violated its obligations under Medicaid.[7] We accordingly must conclude that Plaintiff's complaint does not include a specific statutory claim under 42 U.S.C. § 1983 for Defendant's violation of Medicaid law.

## II.  The Legal Viability of Plaintiff's Claim

Having construed the Complaint to state a constitutional due process claim against Defendant, we must now determine whether that claim contains legally viable theories of relief and whether it meets the plausibility requirement imposed by *Iqbal* and its progeny—in other words, whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Iqbal,* 556 U.S. at 678.

### A. Defendant's Susceptibility to Suit under § 1983

The only substantive argument advanced by the Defendant in its motion to dismiss is that, as a private actor, it is not subject to suit under 42 U.S.C. § 1983. Because we conclude that further factual development could reveal that Xerox's relationship with the FSSA brought it within the reach of the "state action" doctrine, we reject Defendant's invitation to dismiss the suit on these grounds.

The Civil Rights Act of 1871 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 is thus not ordinarily implicated by "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). However, the

---

[7] In a subsequent filing, Plaintiff asserts that her "original claim" was that "Xerox did refuse to provide medical care with reasonable promptness under the Medicaid Act[,] 42 U.S.C. 1396a(a)(8)." Docket No. 18 at 2, ¶ 4. However, Plaintiff submitted this interpretation of her Complaint *after* Defendant's motion to dismiss had already been filed. It is inconsistent with the principles of fair notice for us to credit this retroactive attempt at clarification.

10

Supreme Court has recognized a number of scenarios in which the conduct of nominally private individuals or organizations can be attributed to "state action"; this is to ensure that "constitutional standards are invoked when it can be said that the state is responsible for the specific conduct of which the plaintiff complains." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).[8] Most germane for these purposes, state action may be found when the defendant exercises a function "traditionally exclusively reserved to the State." *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157–158 (1978). Put in slightly different terms, the state cannot avoid responsibility for functions it is constitutionally or statutorily obligated to perform by passing the performance of those functions off to ostensibly private actors. *See Wade v. Byles,* 83 F.3d 902, 906 (7th Cir. 1996) (observing that "a state cannot limit its accountability for the performance of functions that it has an affirmative constitutional obligation to provide").

In a series of decisions, the Supreme Court has held that the provision of medical care to state prisoners is a traditionally exclusive province of the state that, when performed by private actors, subjects them to liability under Section 1983 and the Fourteenth Amendment. *See West v. Adkins,* 487 U.S. 42, 54 (1988); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). At least two decisions of this court, applying the reasoning of these decisions and similar Seventh Circuit precedent, *see, e.g., Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 829–832 (7th Cir. 2009), have concluded that the administration of Medicaid programs to indigent citizens satisfies this "exclusive state function" test. In *Novak v. Indiana Family and Soc. Serv. Admin.,* 2011 WL 1224813 (S.D. Ind. Mar. 30, 2011), the court held that "providing medical care to those who are indigent is also a traditional function of state government." 2011 WL 1224813, at *6. Turning to

---

[8] The questions of whether a defendant acted under "color of law" pursuant to Section 1983 and whether a defendant engaged in "state action" for the purposes of substantive liability for violation of the Fourteenth Amendment are formally distinct, but the Supreme Court has treated them as practically indistinguishable. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 929 (1982). We therefore use the phrase "state action" interchangeably with "color of law" for these purposes.

11

the facts, where the defendant IBM Corporation was under contract with the FSSA to administer Medicaid services in a manner similar to the relationship that Plaintiff now alleges between Xerox and the state, the court noted as follows:

> [T]he contract between IBM and the FSSA clearly provides a degree of discretion to IBM in the performance of the work required by the contract and if, as alleged by [the plaintiff], employees of IBM represented themselves as FSSA representatives and the State relied wholly upon the IBM coalition's work-up of the application to make its Medicaid eligibility determination, then the notion that the State was at all times making the "final call" is illusory, and IBM was indeed performing functions which have been traditionally unique to the State.
> …
> Accepting [plaintiff's] allegations as true, the State entrusted to IBM its obligation to accept, promptly review and process a Medicaid application in accordance with the federal Medicaid statutes and regulations. Accordingly, consistent with *West,* IBM acted under color of state law for purposes of Section 1983.

*Novak,* 2011 WL 1224813, at *6. In *Gibson v. Int'l Bus. Machs .Corp.*, 2010 WL 3981792 (S.D. Ind. Oct. 8, 2010), the court reasoned similarly, concluding that the combination of a traditionally state-performed function and the wide degree of authority ceded by the state to IBM by contract subjected IBM to suit as a state actor. "[I]t is evident that the State of Indiana entrusted substantial decision making authority to IBM, which affected the State's ability to abide by its constitutional obligations . . . . In the Court's opinion, when the state's ability to perform in accordance with constitutional standards is entrusted to a private actor, the actor can be held liable under § 1983." *Gibson,* 2010 WL 3981792, at *6.

We are not, of course, bound by previous decisions of the Southern District of Indiana. Our decision to conclude, as in *Novak* and *Gibson*, that the Defendant is amenable to suit under Section 1983 is guided by two considerations. First, we agree with those holdings that the administration of health insurance for indigent citizens—at least since the 1960s—is traditionally an exclusive government function; the fact that state governments are bound by law to do so in

12

exchange for receiving Medicaid funding strengthens this conclusion. Second, we are conscious that the facts of this case are not fully developed. State action doctrine is a highly fluid, fact-sensitive area of the law, and at this stage we are bound to resolve all factual doubts in favor of Plaintiff so long as her allegations are at least plausible. *See Rodriguez,* 577 F.3d at 823; *see also Gibson,* 2010 WL 3981792, at *5. Plaintiff alleges, in essence, that Xerox, through its affiliate ACS, is party to the same transactions under which the state of Indiana partially "privatized" its administration of Medicaid starting in 2006. *See* Compl. Ex. A; *see generally* Alfred C. Aman, Jr., *Globalization and the Privatization of Welfare Administration in Indiana,* 20 Ind. J. Global Legal Stud. 377 (2013) (discussing the history of the privatization initiative and the role of outside companies in administering benefits). The role of ACS within the Medicaid system was to provide the personnel to process eligibility applications. *See* Aman, *supra* at 399 (citing *Indiana v. Int'l Bus. Machs. Corp.*, No. 49D10-1005-PL-021451, slip op. at 13-14 (Marion Super. Ct., Civ. Div. 10 July 18, 2012)). Defendant does not deny that it contracted with the state in this capacity.

Plaintiff's complaint alleges that Xerox employees working on behalf of FSSA were responsible for her Medicaid eligibility determination and for the decision to assign her to Dr. Anglen as the only available orthopedic specialist—and to refuse her entreaties to receive access to more prompt treatment in light of her severe injury. *See* Compl. 3. If so, then Defendant was acting with nearly full decision-making authority in a field that—by tradition and statute—is the responsibility of the states. Plaintiff alleges that Indiana delegated its statutory responsibilities such that she had nowhere else to turn but Defendant to secure her basic interest in medical care. *Cf. Estelle,* 429 U.S. at 103 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met").

13

Defendant's argument against its liability under Section 1983 misses the mark. It cites two Seventh Circuit decisions, both of which stand for the indisputable principle that a plaintiff has no Fourteenth Amendment claim if he fails to allege that the defendant was engaged in state action rather than private conduct. *See Banks v. Sec'y of Ind. Family and Soc. Servs. Admin.*, 997 F.2d 231, 247 (7th Cir. 1993) ("The plaintiffs do not allege that the actions of [defendants] were the actions of either the federal or state government"); *Echemendia v. Gene B. Glick Mgmt. Corp.*, 199 Fed. Appx. 544, 548 (7th Cir. 2006). Here, Plaintiff argues that the ACS affiliate of Xerox, though nominally a private company, was engaged in state action. Defendant's motion makes no attempt to grapple with Plaintiff's invocation of state action doctrine, content merely to recite the general rule that only the state or its agents may violate the Fourteenth Amendment.

Further factual development might have revealed, of course, that Defendant was not acting in lieu of the state in a manner satisfying the state action doctrine. Plaintiff's uncontroverted allegations as to Defendant's position within the state Medicaid structure are plausible, however, and at this stage we cannot declare that Xerox is an improper Section 1983 defendant.

**B. The Sufficiency of the Two Claims**

Assuming for the purposes of this motion that Defendant's role places it within the reach of Section 1983, we turn now to the question of whether Plaintiff has adequately pleaded the elements of a claim for relief on her constitutional cause of action. We conclude that she has not. Plaintiff has not set forth the essential elements of a procedural due process claim, nor has she anywhere alleged that the opportunities for procedural redress accompanying her deprivation were deficient.[9]

---

[9] Receiving government assistance in paying for medical care is not a "fundamental right." *See Harris v. McRae,* 448 U.S. 297, 316 (1980) (holding, in the context of abortion, that whether or not the "right to choose" is a

To demonstrate a procedural due process violation of a property right, a plaintiff must establish that there is (1) a cognizable property interest, (2) a deprivation of that property interest, and (3) a denial of due process. *Khan v. Bland,* 630 F.3d 519, 527 (7th Cir. 2010); *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004). When a plaintiff alleges that a deprivation occurred pursuant to settled government policy, he must establish that he was denied the process appropriate in that context. *See generally Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). Where a plaintiff alleges that he suffered a deprivation not pursuant to state policy but because of a "random and unauthorized act by a state employee," ordinarily a post-deprivation remedy is all the process that is due and he has failed to state a procedural due process claim. *See Zinermon v. Burch,* 494 U.S. 113, 129 (1990).

We may assume here that Plaintiff has met the first requirement of pleading a procedural due process claim by alleging that she has a property right in her Medicaid coverage. *See Hamby v. Neel*, 368 F.3d 549, 560 (6th Cir. 2004) (holding that a Medicaid recipient's interest in eligibility gives rise to a constitutionally cognizable property right). *See also Mathews*, 424 U.S. at 340 (holding that a claim of entitlement to social security benefits triggers due process protection). Her complaint asserts that she was deemed eligible for Medicaid, that she received a Medicaid card, and that her painkiller prescriptions were in fact paid for by Medicaid. Compl. 5. However, Plaintiff nowhere adequately alleges that she was denied procedural rights in connection with the deprivation, or that the process afforded to her was inadequate. The only mention of "process" at all is in the Complaint's penultimate paragraph: "Wherefore Petitioner prays this court will acknowledge that denying medical care for months on end to any patient with a crushed bone is beyond cruel and inhumane treatment and, also, clearly a failure of due

---

fundamental one, there is no authority for the proposition that any medical or privacy right extends to entitlement to government assistance to overcome obstacles to the exercise of that right that are not of the government's making—such as indigence). A "substantive due process" claim is therefore not available to Plaintiff here.

process." Compl. 7. In *Doherty v. City of Chicago,* 75 F.3d 318 (7th Cir. 1996), the Seventh Circuit upheld the dismissal of a complaint for failure to state a claim where the plaintiff had merely alleged, in conclusory fashion, that "available state remedies are inadequate." 75 F.3d at 322. The Complaint here fails to take even that rudimentary step. Although a plaintiff need not set forth fully formed legal theories in a complaint, he or she must plausibly allege facts consistent with an entitlement to relief. *See Iqbal,* 556 U.S. at 678. Here, Plaintiff has ignored entirely an essential element of a procedural due process claim, and we therefore have no choice but to grant Defendant's motion to dismiss.

## Conclusion

Because we have not reached the merits of any claims Plaintiff may have against Defendant, we dismiss this suit without prejudice and will not yet enter a final judgment pursuant to Federal Rules of Civil Procedure 58. *See generally Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1022 (7th Cir. 2013). Statutory or constitutional avenues of relief may therefore be open to Plaintiff for redress of the injuries she claims to have suffered, and she is urged to seek the assistance of counsel in formulating an acceptable amended complaint should she choose to pursue further action.[10] Plaintiff may file an amended complaint within 21 days of the issuance of this order; if she does not, we will enter a final judgment in favor of Defendants and close the matter. Defendant's Motion to Dismiss for Failure to State a Claim is accordingly GRANTED.

IT IS SO ORDERED.

Date: 02/24/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[10] Plaintiff is urged to seek the assistance of counsel as soon as possible if she elects to file an amended complaint. If she is unable to secure counsel through her own efforts, she may be able to seek assistance in doing so with the Clerk of Court of the Southern District of Indiana (main phone number 317-229-3700) or through the Indiana Bar Association (phone number 317-269-2000). If she elects to file an amended complaint without the assistance of counsel, she is urged to take note of the pleading deficiencies discussed above.

Copies to:

Electronically registered counsel of record via ECF

and

Pauli Coffey
3493 Birchwood Ave.
Indianapolis, IN 46205