UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAULI COFFEY,                          )
                                       )
                Plaintiff,             )
                                       )
        vs.                            )        1:13-cv-00097-SEB-DML
                                       )
XEROX CORPORATION,                     )
                                       )
                Defendant.             )

## ORDER ON PENDING MOTIONS

This cause is before the Court on Defendant Xerox Corporation's Motion for Summary

Judgment [Docket No. 138], filed on January 6, 2015 pursuant to Federal Rule of Civil

Procedure 56(a), and Plaintiff's Motion for Clarification [Docket No. 125], filed on October 30,

2014. For the reasons set forth below, Defendant's motion for summary judgment is granted, and

Plaintiff's motion for clarification is denied as moot.

### Factual and Procedural Background

Plaintiff, who is proceeding *pro se*, has not complied with the Court's Local Rules by

filing a statement of disputed material facts in response to this motion for summary judgment.

*See* S.D. Ind. L.R. 56-1(b). While accordingly we must consider as undisputed all uncontroverted

facts for which Defendant has provided evidentiary support, we shall nonetheless endeavor to

construct an account of the facts as favorable to Plaintiff as possible using the available evidence.

The essence of Plaintiff's complaint is that Defendant Xerox Corporation, which she

claims plays a central role in administering Indiana's Medicaid program, harmed her by giving

her access to delayed and inadequate medical care in the aftermath of a leg injury.

Xerox's involvement in Indiana Medicaid stems from the efforts of then-governor Mitch Daniels, beginning more than a decade ago, to privatize and streamline the administration of the state's social services programs. On December 27, 2006, the state signed a "Master Services Agreement" with a coalition of private contractors headed by International Business Machines Corporation (IBM), setting forth a framework under which the contractors would process program applications and determine claimant eligibility through a remote, centralized system, obviating the need for in-person meetings with case workers. ACS Human Services, LLC ("ACS") was a subcontractor to the IBM coalition and a party to the agreement; Xerox subsequently acquired ACS and has assumed its role.[1] The rollout of this "remote eligibility" system was plagued with difficulties that were exacerbated by the 2008 recession, and in 2009 Governor Daniels announced that some of the planned reforms would be curtailed. However, private entities, including Xerox, continued to perform contract work on behalf of the state's Family and Social Services Administration (FSSA)—including work in connection with Indiana's Medicaid program—through the period giving rise to Plaintiff's claims. *See generally* Pl.'s Ex. A, *Indiana v. Int'l Business Machines Corp.*, Cause No. 49D10-1005-PL-021451, at 1–36 (Ind. Super. Ct., Marion Cnty. July 18, 2012); Def.'s Br. 3 at ¶ 1 & n.1.

Xerox's role in the administration of Medicaid has not been an all-encompassing one. Pursuant to its contract with the state, Xerox's "Indiana Eligibility Project" processes Medicaid applications from Indiana residents and performs various customer service and training functions. According to the uncontroverted affidavit of Indiana Eligibility Project vice president Andrew Hunkin, Xerox does not administer, process, or otherwise manage the provision of medical services to Indiana Medicaid beneficiaries, nor does the company assign doctors or other

---

[1] According to executive Andrew Hunkin, Xerox acquired ACS in February 2010. Def.'s Ex. A at ¶ 3.

health care providers to Indiana Medicaid beneficiaries. Def.'s Ex. A (Hunkin Aff.) at ¶ 6. Rather, once Xerox has performed an eligibility determination, responsibility for a patient's care passes to a managed care organization (MCO), such as Anthem or MDWise, which then assists beneficiaries in managing their health care and selecting their health care providers. *Id.* at ¶ 7. Beneficiaries either choose an MCO on their own, or receive an MCO assignment from the state's enrollment broker—Xerox, however, has no role in that process. Once a Medicaid beneficiary is assigned to an MCO and receiving treatment from a care provider, Xerox has no role in the authorization of payment or the payment of invoices for care provided. *Id.* at ¶¶ 13–14.

In October 2010, Plaintiff Pauli Coffey suffered an injury to her right leg that she has consistently described as a "crushed" or "shattered" femur.[2] On October 20, 2010, she applied for Medicaid, and was subsequently approved as a Medicaid beneficiary with coverage retroactive to October 1, 2010. Def.'s Ex. B at 1–5; Def.'s Ex. I (Dec. 9, 2014 Coffey Dep.) at 82. MDWise was assigned as Plaintiff's MCO. It sent her a letter, dated January 20, 2011, informing her that it was her "Hoosier Healthwise health plan" and providing her with the name and contact information of her assigned primary care physician. Def.'s Ex. C. Shortly after her injury and her Medicaid application—and before she received her primary care physician assignment—Plaintiff visited several emergency rooms in the Indianapolis area seeking treatment for the pain caused by her leg injury. According to Plaintiff, she made these visits on the advice of MDWise's 24-hour on-call nurse. Def.'s Ex. H (Nov. 18, 2014 Coffey Dep.) at 35,

---

[2] As Defendant has pointed out, Plaintiff's medical records do not reflect that she ever suffered such an acute injury. Because the severity of the injury proves irrelevant to the validity of her claims, however, we accept the description she provides of her injury.

40; Dec. 9 2014 Coffey Dep. at 84.[3] Plaintiff received some emergent care, such as taping and braces for her leg and prescriptions for pain medication, during these emergency room visits, and she also underwent what she considered to be an unsafe number of X-ray scans. As Plaintiff has acknowledged, Medicaid paid for these emergency room visits. Dec. 9, 2014 Coffey Dep. at 106–107.[4] Even after receiving her primary care physician assignment from MDWise, Plaintiff never contacted her assigned physician or received treatment from her.[5]

Unsatisfied with the options made available to her by her MCO, Plaintiff sought out an orthopedic surgeon, Dr. Carlos Berrios, without referral. Dr. Berrios agreed to perform an outpatient arthroscopy on her right knee, and he did so on February 1, 2011. *Id.* at 86, 103; Def.'s Ex. J (Ireland Report) at 2–3. After pain developed in her left knee, Dr. Berrios performed another arthroscopy on that knee on April 28, 2011. *Id.* at 2; Def's Ex. K (Berrios visit notes 4/14/2011). Medicaid paid for the first surgery, but Plaintiff maintains that she was not reimbursed for the second. Dec. 9, 2014 Coffey Dep. at 106–107. Two years later, Dr. Berrios performed another arthroscopy of Plaintiff's left knee. Ireland Report at 3.

In August 2011, the FSSA Division of Family Resources notified Plaintiff that her Medicaid benefits would be terminated because of her failure to provide the necessary pay

---

[3] In her November 18, 2014 deposition, Plaintiff initially asserted that *Xerox* had been advising her to make these emergency room visits, "in their capacity as the sole portal for all public assistance in the state of Indiana city of Indianapolis." Nov. 18 Coffey Dep. at 35. She acknowledged, however, that the person she actually spoke to on the phone was "the nurse on call at MDWise, or whatever it was, Anthem, whatever it was." *Id.* She never substantiates with any evidence her apparent belief that Xerox controls MDWise. Uncontroverted evidence in the record states that Xerox has no relationship, contractual or otherwise, with the managed care organization MDWise. Def.'s Ex. A at ¶¶ 11–12.

[4] Plaintiff attached to her initial complaint, as Exhibit H, an email from an executive at Community Health Network discussing an incident in which the hospital apparently turned Plaintiff away because they found that Medicaid would not cover her care. The email advises her to seek treatment at Wishard hospital. While Plaintiff has stated that Medicaid covered all ER care she actually received, it thus seems that she had to hop between hospitals in order to find facilities that would treat her as a Medicaid patient. *See* Docket No. 1, Ex. H.

[5] Plaintiff testifies that she did not seek treatment from her assigned PCP because the doctor was an OB/GYN, and Plaintiff's health problems were unrelated to obstetrics or gynecology. Dec. 9, 2014 Coffey Dep. at 84.

stubs.[6] Def.'s Ex. B at 9. Plaintiff initially indicated that she wanted to appeal this termination, but she withdrew her appeal on October 26, 2011. *Id.* at 20. As of September 30, 2011, her benefits were terminated. *Id.* at 14.

Plaintiff filed a notice of tort claim with the State of Indiana on September 15, 2011, listing a loss date of February 1, 2011. Docket No. 1, Ex. B. She subsequently filed suit under 42 U.S.C. § 1983 against the State of Indiana. *See Coffey v. State of Indiana et al*, Case No. 1:13-cv-00117-JMS-TAB (S.D. Ind. 2013). Judge Magnus-Stinson of our Court dismissed her claim on the grounds that a state and its agencies are not "persons" susceptible to suit under Section 1983. Plaintiff then filed this suit against Xerox Corporation on January 16, 2013. *See* Docket No. 1. We dismissed her initial complaint without prejudice, concluding that Plaintiff had failed to satisfy the pleading requirements imposed by Federal Rule of Civil Procedure 8(a). *See* Docket No. 87. Plaintiff filed her Amended Complaint [Docket No. 88] on March 14, 2014, and Defendant moved for summary judgment on January 6, 2015.

## Legal Analysis

### Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

---

[6] Neither party explicitly says so, but we assume that, given Xerox's role in front-end eligibility determinations on behalf of FSSA's Division of Family Resources, Xerox was involved in this termination decision as well

trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Here, the Defendant as the moving party "bear[s] the initial responsibility of informing the district court of the basis for [its] motion," and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Because Plaintiff, the non-moving party, will bear the burden of proof at trial, Defendant may discharge its burden at this stage of the proceedings by showing an absence of evidence to support Plaintiff's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in Plaintiff's favor, if genuine doubts remain and a reasonable fact-finder could find for Plaintiff, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). But if it is clear that Plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *Ziliak v.*

*AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## Discussion

Plaintiff's Amended Complaint contains three claims: Count One alleges that Defendant violated Plaintiff's "right to safety" under the Fourteenth Amendment, Count Two alleges that Defendant violated her right to "bodily integrity" under the Fourteenth Amendment, and Count Three alleges that Defendant deprived her of her "right to Medicaid" under 42 U.S.C. § 1396. All three claims therefore invoke the cause of action provided by Section 1983 of the Civil Rights Act of 1871, which grants individuals a remedy for violations of federally-guaranteed rights committed by defendants acting under color of state law. *See* 42 U.S.C. § 1983.

Section 1983, of course, is a procedural vehicle for the vindication of federally-protected rights rather than a substantive grant of any particular rights. *See Albright v. Oliver,* 510 U.S. 266, 271 (1994). We must answer two antecedent questions before considering the merits of a cause of action under Section 1983: "(1) whether the conduct complained [of] was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *See Papapetropoulous v. Milwaukee Transport Servs., Inc.*, 795 F.2d 591, 595 (7th Cir. 1986) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)). Defendant does not concede that it acted under color of state law, but it consents, for the purposes of this motion, to the assumption "that it was acting on behalf of the State when executing its obligations" under its service contract. Def.'s Br. 9 n.3. Defendant thus makes a twofold argument in favor of summary judgment: first, that Xerox had no role in causing Plaintiff's alleged injuries as a matter of fact; second, that, in light of Xerox's limited role in the Medicaid program and lack of responsibility for Plaintiff's

injuries, none of Plaintiff's three claims are legally viable. We address the scope of Xerox's involvement in Plaintiff's medical care first, before considering her three claims in turn.

## I.     Xerox's role in Plaintiff's grievances against Indiana Medicaid

Plaintiff's suit is premised on the notion that Xerox is "the exclusive administrator for all public assistance in Indianapolis, Indiana," and that it is thus responsible for all the harm that allegedly befell Plaintiff in her interactions with the Medicaid program—including the unavailability of medical assistance, delays in care, incorrect failure to pay benefits or termination of benefits, and the permanent medical injuries suffered by Plaintiff as a result of her inadequate initial treatment. *See* Am. Compl. at ¶ 2. The designated evidence, however, shows otherwise.

Andrew Hunkin, the vice president for Xerox's Indiana Eligibility Program, has submitted an affidavit in which he states that Xerox's role as a state contractor was primarily to assist the FSSA in processing applications for Medicaid and other public assistance programs. Hunkin Aff. at ¶ 4. He further describes the limited nature of the company's role as follows:

> Xerox does not administer, process, or otherwise manage the provision of medical services to Indiana Medicaid beneficiaries. Xerox specifically does not assign doctors or other health care providers to Indiana Medicaid beneficiaries.
>
> . . .
>
> Once an applicant is determined eligible for Medicaid, the applicant is assigned to a managed care entity, such as MDWise or Anthem, who assists beneficiaries in managing their health care – including the selection of health care providers.
>
> . . .
>
> Xerox does not assign the beneficiary to a managed care entity. The beneficiary can either choose their managed care entity on their application, or they are assigned to a managed care entity by the State's enrollment broker, Maximus.

*Id.* at ¶¶ 6–8. According to Defendant, Xerox had responsibility only for processing Plaintiff's initial application in the fall of 2010—and possibly for terminating her benefits when it determined that she ceased to meet the eligibility criteria in the fall of 2011. The misadventures Plaintiff claims to have suffered in actually obtaining health care under Medicaid or in receiving reimbursements are unrelated to Xerox's gatekeeping role, which it had discharged once it granted her application and passed her along to MDWise as her managed care organization.

Plaintiff designates five pieces of evidence in response to the motion for summary judgment; none creates a genuine factual issue with regard to the scope of Xerox's role in the program. Only two of her exhibits—a state court decision in Indiana and a newspaper article in Nevada—address the question even tangentially.

Plaintiff's Exhibit A, Marion Superior Court Judge David Dreyer's "findings of fact and conclusions of law" in a 2012 breach of contract suit between the state and IBM, bears none of the weight Plaintiff seeks to place on it. According to Plaintiff, Judge Dreyer "clearly identified ACS/Xerox as the sole and exclusive operator of Welfare, to include Medicaid, in Indiana[,] [e]ven going so far as to say ACS/Xerox was always running the show at FSSA. Basically, IBM just came late and brought the beer and some office furniture." Pl.'s Resp. 1. Plaintiff's colorful imagery notwithstanding, the Marion Superior Court ruling says little about ACS, and nothing about Xerox. Instead, in attempting to apportion blame for the ultimate dysfunction of the FSSA system represented by the contract between the state and the IBM group (which included subcontractor ACS, later acquired by Xerox), Judge Dreyer recounted at length the history of the contract, from its hopeful origins to its troubled implementation. Pl.'s Ex. A, *Indiana v. Int'l Business Machines Corp.*, Cause No. 49D10-1005-PL-021451, at 1–36 (Ind. Super. Ct., Marion Cnty. July 18, 2012). While the decision describes the expanded role the contract gave private

contractors in the state's *eligibility determination* process for social services, it never, of course, intimates that Xerox had taken over the actual provision of care or was acting as a managed care entity. *See id.* at 12–14.

Another exhibit cited by Plaintiff is a 2014 newspaper article from the *Las Vegas Review-Journal* describing the death of a woman who had initiated a class-action suit against Xerox alleging that the company's errors as a state contractor had led to the withholding of her medical care. Pl.'s Ex. E. The article, which quotes the opinions of the deceased woman's representatives, details the family's grievance with Xerox's handling of the Nevada Health Link process, which apparently had led to a multi-month delay before the woman received her health insurance coverage and could begin urgently-needed care for a brain tumor. The shortcomings of this article as "evidence" in this case are apparent: the role that Xerox *allegedly* played in the Nevada health insurance system is not probative of the company's role in Indiana's system—nor does the article's description of Xerox's role there, at any rate, deviate much if any from the "eligibility processing" role described by Defendant's evidence here. *See id.* at 2–3.[7]

We therefore consider the viability of Plaintiff's claims against Xerox in light of the fact that the company's actual role in the administration of Indiana Medicaid appears to be limited to eligibility determinations, and we disregard any elements of the claims premised on Plaintiff's unsubstantiated notion that Xerox has arrogated to itself full control over the program and the delivery of health care to Medicaid beneficiaries.

---

[7] The three other pieces of evidence designated by Plaintiff are either wholly irrelevant or cut against her argument that Xerox operated the entirety of Indiana's welfare system. Her Exhibit B is a district court decision in Florida upon which she relies in support of her argument that her statutory right to Medicaid was violated, *see infra*; it contains no mention of Xerox or, of course, the company's role in Indiana's Medicaid system. Exhibit D, a one-page printout apparently from Plaintiff's MCO MDWise, makes no mention of Xerox. Lastly, Exhibit F, a news article regarding the arrest of several FSSA employees on charges of fraud, is irrelevant to any conceivable issue in this case. *See* Docket No. 153 (Note that Plaintiff's five exhibits are designated A through F, with no Exhibit C).

## II.    Plaintiff's Claims

As we have noted, the three counts of Plaintiff's Amended Complaint all seek recovery against Xerox pursuant to Section 1983, on the theory that the company acted under color of state law in harming her. The first two counts allege a violation of her Fourteenth Amendment substantive due process rights, and the third alleges that Xerox deprived her of a statutory right to Medicaid.[8]

### A. Count One

Plaintiff's Count One alleges that Xerox deprived her of her "right to safety under the due process clause of the Fourteenth Amendment pursuant to 42 U.S.C. [§] 1983." Am. Compl. 1. It asserts that, as the state's "exclusive administrator for all public assistance," the company harmed her in the following ways:

1. Denying her access to care for her leg injuries and deciding that "potentially lethal doses of prescription pain killers, to treat only the symptom of pain, were adequate substitutions for real medical treatment of Plaintiff's injuries";

2. Forcing her to "endure potentially lethal doses of radiation in the form of unnecessary x-ray after unnecessary x-ray that Plaintiff was subjected to as she searched for months for real, actual, and legally mandated medical care for her injuries";

---

[8] Plaintiff does not specifically label her due process claims as sounding in substantive rather than procedural due process. However, she never explicitly or implicitly states that the injury of which she complains was the failure to provide adequate *process*; rather, the thrust of her claims is that Xerox deprived her of a fundamental right. *See* Docket No. 87 at 15 (citing *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)) (discussing the elements required to state a claim for a procedural due process violation). Additionally, we noted in granting Defendant's motion to dismiss that Plaintiff had failed to set forth the necessary elements of a procedural due process claim. Docket No. 87 at 15–16. Though she has fleshed out the bases for her claim in her Amended Complaint, she has done so only by describing the alleged fundamental rights with more specificity—not by alleging any deprivation of process. We therefore construe this as a substantive due process claim. The distinction, however, is irrelevant because there is no factual basis for Plaintiff's claims under either theory.

3. Subjecting her to "all the risks associated with any surgery, when general anesthesia is used," by having earlier "refus[ed] to allow Plaintiff to get emergency medical care for the injuries to her right leg"; and

4. More generally, "refus[ing] to timely execute their duties, to ensure Plaintiff's health and civil rights remained intact."

Am. Compl. ¶¶ 4–7.

The Fourteenth Amendment's due process clause protects certain "fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg,* 521 U.S. 702, 720–721 (1997) (quoting *Moore v. City of E. Cleveland, Oh.*, 431 U.S. 494, 502 (1977)). The roster of "fundamental" rights, which the Supreme Court has long been wary of expanding any further, is a short one: it includes the right to marry and procreate, the right to direct the education of one's children, the right to marital privacy, and the right to bodily integrity. *Id.* at 720. In its landmark decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Court held that there is no fundamental right to protection by the government from harms committed by private parties—nor is there a fundamental right to government assistance, "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. at 195–196. Exceptions to this general rule may apply where the state has custody of an individual, or where the state has affirmatively created the danger that gives rise to an individual's harm at the hands of third parties. *See Dykema v. Skoumal,* 261 F.3d 701, 705 (7th Cir. 2001); *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817–818 (7th Cir. 2007).

The "right to safety" that Plaintiff describes thus supports a substantive due process claim only in the narrowest of circumstances; since she is not in state custody, she could only prevail on such a claim if she established that the state failed to protect her in a manner that "shock[s] the conscience" and that this omission proximately caused the danger that led to her injuries. *See King,* 496 F.3d at 818. We need not decide whether the state's Medicaid system wronged her egregiously enough to cross this threshold because there is no factual support for Plaintiff's allegations that Xerox is responsible for the alleged harm. *Cf. Bublitz v. Cottey,* 327 F.3d 485, 488 (7th Cir. 2003) (noting that a viable Section 1983 claim must show that "the *defendants,* acting under color of state law," deprived the plaintiff of a constitutionally protected right) (emphasis added). The undisputed evidence establishes that Plaintiff was deemed eligible for Medicaid as of October 1, 2010 and was assigned to MDWise as her managed care organization. Def.'s Ex. B at 1–5; Def.'s Ex. I (Dec. 9, 2014 Coffey Dep.) at 82. At that point, Xerox's involvement ended. *See* Hunkin Aff. at ¶¶ 6–7, 13–14. Whether or not the delays in her care, the fact that she was administered what she considered unhealthy amounts of x-rays and painkillers, and the risks of her subsequent surgery amount to cognizable injuries—or, somewhat implausibly, deprivations of due process—there is no evidence that Xerox caused these alleged harms. As such, Count One fails.

## B. Count Two

Plaintiff's Count Two alleges that Xerox violated her right to bodily integrity as guaranteed by the Fourteenth Amendment's due process clause. Her allegations in support of Count Two incorporate those described above; her principal factual assertion is that Xerox "willfully, recklessly and repeatedly den[ied] Plaintiff access to immediate medical care for her injuries." Am. Compl. ¶¶ 9–12. She claims that this delay in receiving care left her permanently

physically disabled, caused her undue "extreme pain," and disrupted her family life and her enjoyment of her hobbies and other pursuits. *Id.* at ¶¶ 9–11.

The right to bodily integrity is a fundamental liberty protected by the due process clause. *See Rochin v. California,* 342 U.S. 165, 173 (1952). As made clear by *DeShaney* and subsequent decisions*,* however, the government is not responsible for the violation of a person's bodily integrity unless the state's agent directly caused the invasion or the harm was the direct result of a "state-created danger." *Cf. Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599–600 (7th Cir. 2008); *Archie v. City of Racine,* 847 F.2d 1211, 1222–1223 (7th Cir. 1988). Here, Count Two fails for the same reason that Count One does. None of Plaintiff's allegations in support of either constitutional claim states that Xerox wronged her in determining her eligibility for Medicaid coverage, or that the eligibility determination was related to the delayed and inadequate medical care she allegedly received. *See generally* Def.'s Ex. A. Plaintiff was approved for Medicaid shortly after she submitted her application, and she has admitted that Medicaid covered the initial treatment she received. *See* Dec. 9, 2014 Coffey Dep. at 82, 106–107. No evidence supports an inference that Xerox was involved with the selection of her managed care organization, her ability to see certain doctors, the scheduling of her appointments and surgeries, or the decisions made by the hospital staff and doctors she visited. Because she has established no link whatsoever between Xerox and her bodily integrity, Count Two fails as well.

**C. Count Three**

Count Three alleges that Xerox violated Plaintiff's "civil right to Medicaid" as guaranteed by 42 U.S.C. § 1396. In addition to the previously asserted allegations regarding delays in her care and the physical harm that her treatment and surgery caused her, Plaintiff

specifically asserts that Xerox violated 42 U.S.C. § 1396 in two ways: by purportedly approving her to receive treatment only from Dr. Jeff Anglen rather than the hundreds of other orthopedic surgeons in Indiana, and by "refus[ing]" to assign her to a managed care organization within 30 days of the approval of her Medicaid application. Am. Compl. ¶¶ 15–16.

Although her Amended Complaint does not say so, the specific provision upon which Plaintiff apparently relies here is 42 U.S.C. § 1396a(a)(8), which prescribes that "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). *See also* Docket No. 18 at 2, ¶ 4; Pl.'s Resp. at ¶ 2. The federal courts of appeal have differed in determining the scope of the right that this provision creates.[9] For its part, the Seventh Circuit addressed the issue in *Bruggeman ex rel. Bruggeman v. Blagojevich,* 324 F.3d 906 (7th Cir. 2003). There, a group of parents of developmentally disabled children sued Illinois officials, claiming that the state had violated their right to "reasonable promptness" in assistance—among other rights—because care facilities for their children were heavily concentrated in the southern part of the state, and far away from their homes in northern Illinois. The court observed that "the statutory reference to 'assistance' [in 42 U.S.C. § 1396a(a)(8)] appears to have reference to *financial* assistance rather than to actual medical services . . . . Medicaid is a payment scheme, not a scheme for state-provided medical assistance." 324 F.3d at 910 (emphasis original).

---

[9] A separate question exists regarding whether the "reasonable promptness" provision creates an individual right enforceable through Section 1983. *See generally Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002). The Seventh Circuit has noted that a number of sister circuits have found Section 1396a(a)(8) to create a private, enforceable right; based on this implicit approval, we assume here that it does so. *See Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health,* 699 F.3d 962, 975–976 (7th Cir. 2012). *See also Doe v. Kidd,* 501 F.3d 348, 355–357 (4th Cir. 2007); *Sabree ex rel. Sabree v. Richman,* 367 F.3d 180, 189–193 (3d Cir. 2004); *Bryson v. Shumway,* 308 F.3d 79, 88–89 (1st Cir. 2002); *Doe ex rel. Doe v. Chiles,* 136 F.3d 709, 715–719 (11th Cir. 1998).

Because a "requirement of prompt *treatment* would amount to a direct regulation of medical services"—a type of regulation that the federal government had not undertaken—the court reasoned that the "maldistribution" of care facilities did not implicate 42 U.S.C. § 1396a(a)(8). *Id.* (emphasis original).

As interpreted by the Seventh Circuit, the "reasonable promptness" requirement of 42 U.S.C. § 1396a(a)(8) thus obliges the states to provide eligible beneficiaries with prompt access to the Medicaid system—so that their medical care is reimbursed—rather than mandating any particular standard of accessibility or quality for the care itself. As we have already noted, no evidence supports Plaintiff's repeated contentions that Xerox had a role in determining what doctors Plaintiff could and could not see; moreover, *Bruggeman* does not support the theory that circumscribing a Medicaid beneficiary's treatment options violates Section 1396a(a)(8). Nor is there evidence supporting the allegation that Xerox "refuse[d] to assign Plaintiff to managed care within 30 days of approval." Am. Compl. ¶ 16. The only relevant designated evidence states, in fact, that Xerox had no role in assigning Plaintiff to a managed care organization. *See* Hunkin Aff. at ¶ 8 ("Xerox does not assign the beneficiary to a managed care entity."). Even if there were a genuine issue of material fact on these questions, the harm Plaintiff allegedly suffered would not be a violation of the "reasonable promptness" provision. *See Bruggeman,* 324 F.3d at 910; *Bertrand ex rel. Bertrand v. Maram,* 495 F.3d 452, 458–459 (7th Cir. 2007) (holding that a prioritization system that created a waiting period for some beneficiaries did not violate the "reasonable promptness" requirement). Plaintiff has disclaimed any quarrel with the Medicaid reimbursements provided to her during this initial period, and the termination of her eligibility in

September 2011 occurred well after the period where she sought, and was allegedly denied, adequate care.[10]

In her response, Plaintiff relies heavily on an unpublished district court opinion from the Southern District of Florida, *Florida Pediatric Society v. Dudek,* No. 05-23037-CIV-Jordan/O'Sullivan (Dec. 31, 2014) (attached as Pl.'s Ex. B), in which the court interpreted Section 1396a(a)(8) more expansively. The judge in that case, however, based his conclusion that Section 1396a(a)(8) "provides a federal right to reasonably prompt provision of assistance" on what, in his circuit, was binding precedent: the Eleventh Circuit decision in *Doe ex rel. Doe, Sr. v. Chiles,* 136 F.3d 709, 719 (11th Cir. 1998). As Defendant notes, the Seventh Circuit took note of *Chiles* in addressing the same question in *Bruggeman*—and it expressly rejected the Eleventh Circuit's interpretation, adopting a narrower reading. *See Bruggeman,* 324 F.3d at 910 (contending that the proper distinction between financial assistance and "actual medical services" was "missed" by *Chiles* and a similar decision from the First Circuit). The decisions of district courts outside the Seventh Circuit have little persuasive force for us, *see Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987); they have no force at all when they rely on reasoning expressly rejected by the Seventh Circuit. Plaintiff's reliance on *Dudek* is therefore unhelpful.

---

[10] In her December 9, 2014 deposition, Plaintiff stated as follows:

> Q: Now, did Medicaid pay for the ER visits?
> A: Eventually.
> Q: Okay. So you're not seeking any sort of reimbursement for any Medicaid—
> A: No.
> Q:--or any emergency room visits?
> A: Not during the time that Medicaid was there. I am seeking reimbursements for our co-pays for subsequent medical visits the second surgery, the – yes, I am seeking reimbursement for non-Medicaid covered expenses.

Dec. 9, 2014 Coffey Dep. at 106–107.

We must grant summary judgment on Plaintiff's Medicaid Act claim for two reasons: her allegations do not describe a violation of the limited individual right created by Section 1396a(a)(8), and, even if they did, she lacks factual support for her belief that Xerox bears any responsibility for the harms she has described in her Amended Complaint.[11]

## Conclusion

Plaintiff appears to have misunderstood, or exaggerated, the role that Xerox played in Indiana Medicaid at the time of her leg injury and her attempts to secure medical care. If her allegations are true, then Indiana's Medicaid system served her poorly, and her frustration and outrage are understandable. She has given us no evidence apart from opinion and conjecture, however, sufficient to allow a rational factfinder to pin the responsibility for this alleged mistreatment on Xerox. *Cf. Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors . . . ."). We must accordingly GRANT Defendant Xerox's motion for summary judgment as to all three of Plaintiff's claims.

Also pending before the Court is Plaintiff's "Motion for Clarification on Plaintiff's Motion for Presiding Judge" [Docket No. 125], in which she requests a ruling on her earlier motion requesting that the Court, rather than Magistrate Judge Lynch, handle certain non-

---

[11] Plaintiff also mentions the "equal access" requirement of 42 U.S.C. § 1396a(a)(30)(A), for the first time, in her response brief. Regardless of whether she has waived this argument by failing to mention it until her response in opposition to summary judgment, a claim under Section 1396a(a)(30) suffers from the same fatal lack of factual support as the Section 1396a(a)(8) claim: there is no designated evidence permitting an inference that Xerox, which has contracted to perform eligibility screening for the state, has anything to do with ensuring that Medicaid payments are sufficient "to enlist enough providers so that care and services are available to the general population in the geographic area." 42 U.S.C. § 1396a(a)(30)(A). *See generally Comm. Pharmacies of Ind., Inc. v. Ind. Family & Soc. Servs. Admin.*, 816 F. Supp. 2d 570, 579 (S.D. Ind. 2011) (describing the provision's requirements).

dispositive matters. We denied the underlying "motion for presiding judge" on December 10, 2014, *see* Docket No. 136, and we therefore DENY the motion for clarification as moot.

This matter is closed, and judgment shall enter in favor of Defendant.

IT IS SO ORDERED.


Date: _____05/15/2015_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

PAULI  COFFEY
3493 Birchwood Ave
Indianapolis, IN 46205

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Judith S. Okenfuss
ICE MILLER LLP
judy.okenfuss@icemiller.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com